01

02

03

04

05                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
06                              AT SEATTLE

07  DEBORAH SEIBEL,                    )    CASE NO. C05-1086-RSM
                                       )
08          Plaintiff,                 )
                                       )
09       v.                            )    REPORT AND RECOMMENDATION
                                       )    RE: SOCIAL SECURITY
10  JO ANNE B. BARNHART, Commissioner  )    DISABILITY APPEAL
    of Social Security,                 )
11                                      )
            Defendant.                  )
12  _____  )

13          Plaintiff Deborah Seibel proceeds through counsel in her appeal of a final decision of the

14  Commissioner of the Social Security Administration (Commissioner).  The Commissioner denied

15  plaintiff's application for Disability Insurance (DI) benefits after a hearing before an Administrative

16  Law Judge (ALJ).  Having considered the ALJ's decision, the administrative record (AR), and all

17  memoranda of record, it is recommended that this matter be REMANDED for further

18  administrative proceedings.

19                    **FACTS AND PROCEDURAL HISTORY**

20          Plaintiff was born on XXXX, 1950.[1]  She completed high school and attended college for

21  _____

22      [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the
    General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the

    REPORT AND RECOMMENDATION RE:
    SOCIAL SECURITY DISABILITY APPEAL
    PAGE -1

01  two years.  Plaintiff's past work experience includes employment as a bank teller, bank savings

02  manager, and administrative assistant.  Plaintiff applied for DI on February 9, 2001, alleging

03  disability since April 1, 2000 due to neck pain, shoulder pain, back pain, leg pain and migraine

04  headaches.  Her application was denied initially and on reconsideration, and she timely requested

05  a hearing.

06          An ALJ held a hearing on July 10, 2002, taking testimony from plaintiff and William Weiss,

07  a vocational expert.  (AR 309-335.)  On October 23, 2002, the ALJ issued a decision finding

08  plaintiff not disabled.  (AR 25-33.)[2]

09          Plaintiff appealed the ALJ's decision, submitting additional evidence.  (AR 268-308.)  On

10  April 20, 2005, the Appeals Council denied plaintiff's request for review.  (AR 5-9.)  The Appeals

11  Council stated that the new information was "about a later time" and, therefore, did not affect the

12  ALJ's decision as to whether plaintiff was disabled beginning on or before October 23, 2002.  (AR

13  6.)  Plaintiff appealed this final decision of the Commissioner to this Court.

14                                        **JURISDICTION**

15          The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

16                                        **DISCUSSION**

17          The Commissioner follows a five-step sequential evaluation process for determining

18  whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must

19  be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not

20  _____

21  official policy on privacy adopted by the Judicial Conference of the United States.

22          [2] Plaintiff correctly points out that the ALJ's Decision contains a typographical error at AR
    33, incorrectly listing the date as October 23, 2001 instead of October 23, 2002.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01 engaged in substantial gainful activity since her alleged onset date.  At step two, it must be

02 determined whether a claimant suffers from a severe impairment.  The ALJ found plaintiff had

03 severe impairments consisting of degenerative disc disease of the lumbar spine, foot and ankle pain

04 diagnosed as flexible pes planus, a "fibromyalgia-like process" (AR 28), and obesity. Step three

05 asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found that

06 plaintiff's impairments did not meet or medically equal the criteria for any listed impairments.  If

07 a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual

08 functional capacity (RFC) and determine at step four whether the claimant has demonstrated an

09 inability to perform past relevant work.  The ALJ found plaintiff able to perform at a sedentary to

10 light level of physical exertion with additional restrictions specified in the decision, with no

11 emotional limitations, and therefore able to perform her past relevant work as an administrative

12 assistant.  Finding the plaintiff not disabled at step four, the ALJ did not proceed to step five of

13 the sequential analysis to consider plaintiff's ability to perform other work available in significant

14 numbers in the national economy.

15         This Court's review of the ALJ's decision is limited to whether the decision is in

16 accordance with the law and the findings supported by substantial evidence in the record as a

17 whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more

18 than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

19 mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750

20 (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's

21 decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

22 2002).

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01      Plaintiff argues the ALJ erroneously rejected the opinion of her treating physician to the

02  effect that she could not work full time, erroneously relied on a description of her past relevant

03  work as "generically performed" rather than as she actually performed the job, failed to properly

04  include her use of a cane in the RFC finding and corresponding hypothetical question, and did not

05  provide clear and convincing reasons for finding plaintiff to be not credible.   [3]  Plaintiff further

06  argues that the medical reports submitted to the Appeals Council justify a remand for further

07  administrative proceedings under "sentence-four" of 42 U.S.C. § 405(g).  The Commissioner

08  argues that the ALJ's decision is supported by substantial evidence and free of legal error, and

09  should be affirmed.   For the reasons described below, the undersigned recommends that the

10  matter should be remanded for further consideration of step four of the sequential evaluation

11  process.

12                              Evaluation of Opinion of Treating Physician

13      In general, more weight should be given to the opinion of a treating physician than to a

14  non-treating physician, and more weight to the opinion of an examining physician than to a non-

15  examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted

16  by another physician, a treating or examining physician's opinion may be rejected only for "'clear

17  and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).

18  Where contradicted, a treating or examining physician's opinion may not be rejected without

19  "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."

20  _____

21      [3] The parties agree that the ALJ did not reach step five of the sequential analysis, and made
    no step five finding.  Therefore, plaintiff's argument that the ALJ's step-five finding is deficient
22  is moot.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01   *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  Where the opinion

02   of the treating physician is contradicted, and the non-treating physician's opinion is based on

03    independent clinical findings that differ from those of the treating physician, the opinion of the

04   non-treating physician may itself constitute substantial evidence.  *See Andrews v. Shalala*, 53 F.3d

05   1035, 1041 (9th Cir. 1995).  It is the sole province of the ALJ to resolve this conflict.  *Id.*

06          Plaintiff asserts that the ALJ failed to give legally sufficient reasons for rejecting the

07   opinion of Dr. Rossbach, her treating physician, that she would have difficulty working full time

08   with certain specified limitations.  (*See* AR 29, 121-123.)

09          In response to questions posed by plaintiff's attorney, Dr. Rossbach stated as follows:[4]

10   Q:     Given Ms. Seibel's objective findings regarding her obesity, fibromyalgia and
         the foot and ankle problems, do you think Ms. Seibel could stand and/or walk
11       six or more hours out of an eight hour day?

12   A:     No, due to the pain that would cause.

13   Q:     Given Ms. Seibel's objective findings regarding her obesity, fibromyalgia and
         foot and ankle problems, do you think Ms. Seibel could do a job where she
14       could sit, or sit and stand, alternating at will, eight hours a day, five days a
15       week, fifty weeks a year?

16   A:     No.  I believe Ms. Seibel would have difficulty performing such work on a
         consistent basis eight hours a day, five days a week, fifty weeks a year.  To
         maintain that posture or postures full time would cause her too much pain.

17

18   Q:     If she were in a job where she could sit, or sit and stand, alternating at will, on
         a scale of none, mild, moderate, marked, and extreme to what degree do you
19       believe her pain would preclude her ability to maintain her attention and
         concentration on two to three step tasks?

20   A:     To a marked degree.

21

22          [4] The evidence was presented in the form of a signed declaration, consisting of questions
   asked by plaintiff's counsel with the doctor's responses. (AR 121-123.)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

Q:     Can you explain why the obesity and fibromyalgia would cause difficulty in sitting?

A.     They both contribute to pain.  When a person is obese, there are stresses in the low back which cause pain and with fibromyalgia, the lower back is one of the sensitive areas.  Her obesity also puts an abnormal load on the spine which would then cause pain in the low back area.

Q:     Is there any particular advantage you have as a treating doctor in terms of assessing her limitations than a physician who has never examined her?

A:     Yes. I have seen her a number of times and have had the opportunity to observe her and watch her move.

(AR 122-123.)

The ALJ considered the opinion of Dr. Rossbach, but gave it "not...much weight":

While that of a treating physician, [and] entitled to great weight, such a[n] opinion unaccompanied by objective findings to support its conclusions is not overly compelling.  Here Dr. Rossbach replied to queries by Claimant's Counsel without reference to specific findings that would support this opinion, other than to state she had observed her over time.  Observations are one thing, objective findings are another, and here the latter are lacking. That she is obese and complains of pain may well be true, however, simply to say this much, without more, is inadequate to constitute a specific finding based on clear medical evidence.  It is well settled that the limitations given by a doctor must bear some relationship to the medical findings or they can be rejected.

(AR 29-30 (internal citations omitted.))

Plaintiff contends that the reasons given by the ALJ for rejecting Dr. Rossbach's opinions were not legally sufficient.  Plaintiff argues that, assuming the ALJ meant "clear *objective* evidence" when he referred to "clear *medical* evidence," the ALJ's conclusion is erroneous because plaintiff is objectively obese as determined by the Body Mass Index (BMI) Table,[5] and

---

[5] The BMI, which assesses obesity by comparing the ratio of height to weight,  is incorporated by reference in the SSA's policy interpretation ruling Social Security Ruling (SSR)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

01 also presented with objective findings of fibromyalgia.

02       The Commissioner argues that the ALJ assessed the proper degree of weight to Dr.

03 Rossbach's opinion, which related to the ultimate issue of disability, an issue reserved to the

04 Commissioner.   Further, the Commissioner argues that the lack of credibility of plaintiff's

05 subjective complaints negatively impacted Dr. Rossbach's opinion, as does other medical evidence

06 that contradicted Dr. Rossbach.

07       While Social Security Ruling (SSR) 02-01p does adopt the BMI's height/weight ratio in

08 assessing obesity, in reference to which the plaintiff would be considered "extremely obese" and

09 therefore at the greatest risk for developing obesity-related impairments, the ruling also states that

10 the levels do not correspond with any degree of functional loss, and the fact that obesity is a risk

11 factor for other impairments does not mean that an individual with obesity necessarily has any of

12 these impairments. With this context, it appears that the ALJ's use of the phrase "clear medical

13 evidence" was not meant as a stand-in for a lacking of "objective" evidence.   The fact the plaintiff

14 was objectively "obese" as determined by her height and weight was not sufficient. Further

15 evidence was necessary to establish her functional loss as a result of that obesity.

16       Plaintiff also argues that it was error for the ALJ to ignore the objective evidence of

17 fibromyalgia, pointing to the findings of rheumatologist Dr. Prickett in September 2000 that

18 plaintiff presented with "diffuse soft tissue trigger points in a pattern characteristic of

19 fibromyalgia." (AR 171.)   However, contrary to plaintiff's assertion, the ALJ did not ignore this

20

---

21 02-1p, "Evaluation of Obesity."   Although SSRs are not published in the Federal Register and do
22 not have the force of law, we nevertheless give deference to the Commissioner's interpretation of
its regulations. *Bunnell v. Sullivan*, 947 F.2d 341, 346, n. 3 (9th Cir. 1991).

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

01 evidence:

02      Some medical reports have made reference to fibromyalgia.  However, the record is
        devoid of specific findings that resulted in this diagnosis.  For instance, treating
03      physician Christine Rossbach, M.D., refers to the existence or the history of
        fibromyalgia, but these references are not accompanied by a finding to support the
04      diagnosis.

05      The closest event to a diagnosis occurred in September 2000 when the claimant's
        complaints were recounted.  According to the chart note dated September 18, 2000,
06      the claimant reported a 15 year history of "chronic aching in her neck, shoulders,
        back, arms, legs associated with tenderness in her muscles and sleep disturbance from
07      pain at night.  Also found were diffuse soft tissue trigger points in a "pattern
        characteristic of fibromyalgia" leading to a diagnosis of a "fibromyalgia-like process".
08      At the same time, this report notes the occasional malar rash in a woman with a family
        history of lupus".  Thus a clear diagnosis does not appear to have been made.
09      Nevertheless, in giving the claimant the benefit of the doubt, the [sic] I find that the
        claimant's "fibromyalgia-like process" is a severe impairment because it possibly could
10      cause some pain and thus limitation."

11 (AR 27-28 (internal citations omitted.))

12         The ALJ also did not totally reject Dr. Rossbach's opinion that plaintiff "would have

13 difficulty" in performing certain work activity on a full time basis, as the ALJ found that plaintiff's

14 obesity and fibromyalgia-like process did restrict her physical movement and exertion, and found

15 certain limitations in her functional capacity to be appropriate. (AR 28-29.)  However, the opinion

16 of a physician, even a treating doctor, is not binding on the ALJ with regard to the existence of

17 an impairment or the ultimate determination of disability. *Tonapetyan v. Halter*, 242 F.3d 1144,

18 1148 (9th Cir. 2001).  The doctor provided a medical explanation for difficulty  plaintiff would

19 have in sitting: "When a person is obese, there are stresses in the low back which cause pain and

20 with fibromyalgia, the lower back is one of the sensitive areas.  Her obesity also puts an abnormal

21 load in the spine which would then cause pain in the low back area." (AR 123.)  But with regard

22 to a job that allowed plaintiff to sit and stand, alternating at will, the doctor did not provide such

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

01 a medical explanation, and her testimony was no more than conclusory: "I believe Ms. Seibel

02 would have difficulty performing such work on a consistent basis eight hours a day, five days a

03 week, fifty weeks a year.  To maintain that posture or postures full time would cause her too much

04 pain."  (AR 123.)

05       The ALJ need not accept a treating physician's opinion which is "brief and conclusionary

06 in form with little in the way of clinical findings to support [its] conclusion." *Magallanes,* 881 F.2d

07 at 751.  Here, the ALJ gave appropriate weight to that portion of Dr. Rossbach's statement that

08 constituted a medical opinion, and properly rejected that portion of the doctor's statement that

09 invaded the province of the Commissioner.  Plaintiff has not demonstrated error in the ALJ's

10 consideration of the opinion of her treating doctor.

11 <u>Plaintiff's Credibility</u>

12       Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

13 reject a claimant's testimony.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  *See*

14 *also Thomas*, 278 F.3d at 958-59.  In finding a social security claimant's testimony unreliable, an

15 ALJ must render a credibility determination with sufficiently specific findings, supported by

16 substantial evidence.  "General findings are insufficient; rather, the ALJ must identify what

17 testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81

18 F.3d at 834.  "We require the ALJ to build an accurate and logical bridge from the evidence to her

19 conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."

20 *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the

21 ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between

22 his testimony and his conduct, his daily activities, his work record, and testimony from physicians

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

01  and third parties concerning the nature, severity, and effect of the symptoms of which he

02  complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). A reviewing court

03  should not be forced to speculate as to the grounds for an ALJ's rejection of disabling pain.

04  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

05      Considering the plaintiff's testimony concerning her subjective complaints and subjective

06  limitations, the ALJ found that her testimony "was not wholly credible":

> A number of problems are apparent in her testimony. For example, the claimant
> testified that she had experienced the same problems for approximately the past 10
> years, yet worked with them. The medical evidence has failed to show any marked
> worsening of her impairments during that time. The question then arises as to why
> the claimant cannot work now, when she was able to do so for the past decade.
>
> Also, her level of activity is inconsistent with the degree of impairment alleged in her
> testimony. She leads a full life: as indicated earlier, she attends church and church
> activities; she takes care of her personal needs; she drives when she goes shopping;
> she performs household cleaning tasks. While not dispositive of the issue, nonetheless
> the ability to perform these functions belies her contention that she is incapable of
> physical activity. Her testimony paints the picture of a severely disabled individual
> while her activity level shows an individual capable of a fairly normal range of
> activity–in short a reason for disbelieving her complaints of excess pain.
>
> The claimant's appearance at the hearing also undercut her allegations. She was
> observed to sit comfortably and move easily. During the hearing she was attentive
> and polite: traits that would be difficult to maintain if suffering the degree of pain
> alleged. While observations of the claimant during the course of a hearing standing
> alone are not determinative of the issue of disability, it provides further evidence of
> inconsistencies with the claimant's testimony. Here not only was the claimant
> comfortable and cogent during the hearing, I have noted the abovementioned lack of
> medical findings and her adequate daily activities in conjunction with this testimony
> to determine that her credibility was somewhat lacking.

20  (AR 30 (internal citations omitted.))

21      Plaintiff argues that these reasons are not clear and convincing. While acknowledging that

22  the ALJ may rely on reasonable personal observations to find a claimant not credible (*see* Dkt. 13

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

01  at 14), plaintiff does take issue with the ALJ's reliance on her politeness and cogent responses at

02  the administrative hearing as supportive of an adverse credibility decision.[6]

03       "Sit and squirm" jurisprudence is disfavored. *Perminter v. Heckler*, 765 F.2d 870, 872

04  (9th Cir. 1985). When the ALJ "subjectively arrive[s] at an index of traits which he expects the

05  claimant to manifest at the hearing[,]" without any medical basis for the expectations, "this

06  approach 'will not only result in unreliable conclusions when observing claimants with honest

07  intentions, but may encourage claimants to manufacture convincing observable manifestations of

08  pain or, worse yet, discourage them from exercising the right to appear before an Administrative

09  Law Judge for fear that they might not appear to the unexpert eye to be as bad as they feel.'"

10  *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982) (quoting *Tyler v. Weinberger*, 409

11  F. Supp. 776, 789 (E.D. Va. 1976)). "That a claimant does not exhibit manifestations of pain at

12  the hearing before the ALJ is, <u>standing alone</u>, insufficient to rebut a claim of pain." *Fair v. Bowen*,

13  885 F.2d 597, 602 (9th Cir. 1989) (emphasis added).

14       Here, the ALJ's consideration of plaintiff's appearance at hearing did not stand alone, but

15  also cited other factors in finding plaintiff's credibility to be "somewhat lacking," including her

16  previous  ability to work with the same problems with no evidence of any medical worsening, as

17  well as her daily activities.  (AR 30.)  Given those factors, the ALJ's determination that plaintiff

18  was "not totally credible" should stand.

19                    <u>Plaintiff's Use of a Cane</u>

20       Plaintiff further argues that the ALJ erred in failing to include her use of a cane in the RFC

21  _____

22       [6] Also, the record somewhat belies the ALJ's comment that the plaintiff was attentive.
     (*See, e.g.,* AR 334.)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

01  finding and corresponding hypothetical to the vocational expert.  Specifically, plaintiff testified:

02  "If I sit for longer than a half hour to 45 minutes, I have to use–I have a cane that Dr. Hansen

03  prescribed for me that I use to help boost myself up."  (AR 318.)

04      In considering whether plaintiff's ankle and foot problems met a listed impairment, the ALJ

05  cited plaintiff's use of a single cane and ability to perform a number of daily activities as evidence

06  that she did not meet the listing of impairments, as medical listing 1.02, "Musculoskeletal, major

07  dysfunction of a joint(s)," requires a claimant to be unable to ambulate effectively with <u>two</u> canes,

08  two crutches or a walker, plus the inability to move sufficiently to perform her activities of daily

09  living. (AR 28.)

10      The ALJ did not make a finding that plaintiff's use of a cane was medically required.

11  Indeed, the record is completely devoid of the medical documentation required by SSR 96-9p

12  establishing the use of a "hand-held assistive device," such as a cane.  It is proper for an ALJ to

13  limit a hypothetical to limitations supported by substantial evidence in the record.  *Magallanes,*

14  881 F.2d at 756-757.  There was no error in the ALJ's use of a RFC finding and hypothetical that

15  did not include plaintiff's use of a cane.

16                                      Step Four Finding

17      At step four of the sequential evaluation process, the ALJ assesses the claimant's ability

18  to perform past relevant work.  At this stage, the social security claimant has the burden of proof.

19  20 C.F.R. § 404.1512(a).  Here, in addressing plaintiff's ability to perform her past relevant work,

20  the ALJ found as follows:

21      Based upon the claimant's residual functional capacity, I must determine whether the
        claimant can perform any of his [stet] past relevant work.  The phrase "past relevant

22      work" is defined in the Regulations at 20 CFR §§ 404.1565.  The work usually must

have been performed within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the claimant to learn to do the job and meet the definition of substantial gainful activity.

The Vocational Expert testified concerning the exertional and skill requirements of the claimant's past relevant work.  Mr. Weiss reported the claimant's job as a bank teller was skilled light work while her jobs as an administrative assistance [sic] and bank service provider were skilled sedentary work.

I described a hypothetical individual with the claimant's vocational characteristics of age, education and work experience and her residual functional capacity.  Based on those factors, the vocational expert testified that this person could still perform the claimant's past work as an administrative assistant because this job allows an individual to get up and down on a fairly regular basis.  I find that the claimant is able to return to her past relevant work and therefore is "not disabled" within the meaning of the Social Security Act.

The claimant disputed on cross examination the testimony that she could return to her former work.  She reported that the commute is too far, a factor [that] is irrelevant in determining whether an individual is "disabled" within the meaning of the Social Security Act.  She also claimed that she had to walk "all over the place" at her former place of employment at the Boeing Company.  Again, this factor is irrelevant, because a person can return to her past relevant work based on that position[']s generic duties or as performed.  *See: SSR 82-61.*  Social Security Rulings are binding upon me, 20 C.F.R. 402.35C; *Paulson v. Bowen*, 836 F.2d 1249 (9th Cir. 1988), thus must be applied in situations such as this to conclude that her work, as generically performed and so identified by the vocational expert, lies within her abilities.

The claimant's attorney added factors to the residual functional capacity in his questioning of the vocational expert.  With the added restrictions of the need to lie down on the job, to be absent for 5 to 7 days a month and a marked limitation in concentration, persistence and pace, an individual would be unable to work.  However, these restrictions are not found in the medical record, other than Dr. Rossbach's reply to the interrogatory by Attorney Friedman concerning concentration a[nd] pace, which appear wholly unsupported by the record and well beyond her expertise as a Family Doctor.  See: 20 C.F.R. 404.1427 (d)(5); *Reed v. Massanari*, 270 F.3d 838, n.3 (9th Cir. 2001).  Counsel also alluded to depression, which I do not find in this medical record.  Restrictions that do not pertain to the claimant are not considered in determining whether she can perform her past relevant work, or other work as it exists in the regional or national economy.  *Osenbrock, supra.*

(AR 30-31 (emphasis added.))

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

01    SSR 82-61, "Past Relevant Work–The Particular Job of the Occupation as Generally

02  Performed," clarifies the policy in determining whether a social security claimant can perform his

03  or her past relevant work, based on the claimant's RFC to preform the demands of the kind of

04  work performed in the past.  If the claimant retains the RFC to perform the job duties as actually

05  performed, the claimant is found "not disabled."  Likewise, if the claimant retains the RFC to

06  perform the job duties "as ordinarily required by employers throughout the national economy,"

07  the claimant would also be found "not disabled."  The regulations specify, however, that a

08  consideration of the claimant's ability to perform past relevant work based on a "generic

09  occupational classification of the work is likely to be fallacious and unsupportable." SSR 82-61.

10  As a policy matter, therefore, the consideration of a claimant's disability is only to be determined

11  based on the actual functional demands and job duties of a particular past relevant job, or the

12  demands and duties of the occupation as generally required by employers throughout the national

13  economy.  The regulation notes that it may be necessary to utilize the services of a vocational

14  expert in order to determine how a particular job is usually performed.

15    In the decision, the ALJ noted plaintiff's dispute that she could return to her former work,

16  citing testimony by plaintiff that the commute was too far and that she "had to walk 'all over the

17  place' at her former place of employment at the Boeing Company." (AR 31.)  While the transcript

18  of the hearing does show plaintiff's testimony about the commute (AR 326), it does not reveal the

19  testimony about walking as quoted by the ALJ.  Plaintiff suggests that "the ALJ appears to have

20  conceded that Seibel could not do her past relevant work as an administrative assistant as she

21  actually performed that job" (Dkt. 13 at 11), but the decision lacks such a statement by the ALJ.

22  While the "Findings" section of the decision does state "the claimant's past relevant work as an

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

01  administrative assistant did not require the performance of work-related activities precluded by

02  her residual functional capacity" (AR 32), the ALJ does not state whether this finding is based on

03  the plaintiff's work as actually performed or as ordinarily required by employers throughout the

04  national economy.  The confusion is further perpetuated by the ALJ's reference to "generic duties"

05  and "work, as generically performed." (AR 31 (emphasis added.))  The Commissioner suggests

06  that the ALJ meant to refer to work as "generally performed," rather than "generically performed,"

07  but a step four finding of "no disability" based on past relevant work "as ordinarily required by

08  employers throughout the national economy" generally requires the testimony of a vocational

09  expert.  Mr. Weiss, the vocational expert, did not provide testimony on this point, notwithstanding

10  the ALJ's assertion to the contrary.  In response to a hypothetical posed by the ALJ, Mr. Weiss

11  simply said that "the administrative assistant would probably be the one that would best fit that

12  hypothetical," providing no clarification as to whether the position was as performed by plaintiff

13  or as ordinarily required by employers.  (AR 331.)  Accordingly, the case should be remanded to

14  allow the ALJ to clarify the basis for the step four finding that plaintiff was not disabled, obtaining

15  additional vocational testimony if necessary.

16                                 Appeals Council Evidence

17          Plaintiff submitted to the Appeals Council additional medical reports.  (AR 267-308.)  The

18  Appeals Council denied the request for review, stating that the information was "about a later

19  time" and did not affect the decision about whether plaintiff was disabled beginning October 23,

20  2002. (AR 6.)  The facts support the Appeals Council's conclusion that the records related to a

21  later time period.  Dr. Billow's statement is dated March 1, 2005.  (AR 275.)  Further, his opinion

22  that plaintiff would not be able "to perform a regular work week reliably" addresses the ultimate

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

01  issue of disability reserved to the Commissioner.  The other records are essentially consistent with

02  medical reports already in the record, and do not affect the conclusion that the ALJ's findings

03  regarding plaintiff's impairments are supported by substantial evidence.

04  ## **CONCLUSION**

05      For the reasons described above, this matter should be REMANDED for further

06  administrative proceedings.  The ALJ should clarify the basis of the step four conclusion that

07  plaintiff is not disabled, specifying whether plaintiff is capable of performing her past work as

08  actually performed, or as ordinarily required by employers throughout the national economy,

09  obtaining additional vocational testimony if necessary. If a finding of "not disabled" is made at step

10  four, then the ALJ should proceed to step five of the sequential analysis.  A proposed order

11  accompanies this Report and Recommendation.

12      DATED this 30th  day of March , 2006.

13

14      Mary Alice Theiler
        United States Magistrate Judge

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -16